FILED
DALLAS COUNTY
11/6/2017 11:43 AM
FELICIA PITRE
DISTRICT CLERK

Case 4:17-cv-03755   Document 1-2   Filed on 12/12/17 in TXSD   Page 1 of 20

Christi Underwood

NO._____
DC-17-15389

| | | |
|---|---|---|
| **JOHN H. ADAMS** and **LORRAINE ADAMS**, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | |
| **3M COMPANY** *f/k/a* MINNESOTA MINING | § | DALLAS COUNTY, TEXAS |
| AND MANUFACTURING, a Delaware | § | |
| Corporation with its principal place of business | § | |
| in the State of Minnesota; | § | |
| **APPLETON GRP LLC** *d/b/a* APPLETON | § | _____JUDICIAL DISTRICT |
| GROUP and EMERSON ELECTRIC CO., a | § | |
| Delaware Corporation with its principal place of | § | |
| business in the State of Illinois; | § | |
| **THE BOEING COMPANY** *d/b/a* **BOEING** | § | |
| **INTEGRATED DEFENSE SYSTEMS** (*sued* | § | |
| *individually and as successor-in-interest to* | § | |
| MCDONNELL DOUGLAS CORPORATION | § | |
| *and as successor-in-interest to* DE | § | |
| HAVILLAND AIRCRAFT OF CANADA | § | |
| LTD.), a Delaware Corporation with its | § | |
| principal place of business in the State of | § | |
| Illinois; | § | |
| **CBS CORPORATION** (*f/k/a* VIACOM, INC. | § | |
| *successor by merger with* CBS | § | |
| CORPORATION *f/k/a* WESTINGHOUSE | § | |
| ELECTRIC CORPORATION)(*successor-in-* | § | |
| *interest* BF STURTEVANT), a Delaware | § | |
| Corporation with its principal place of business | § | |
| in the State of New York; | § | |
| **CERTAINTEED CORPORATION**, a | § | |
| Delaware Corporation with its principal place of | § | |
| business in the State of Pennsylvania; | § | |
| **COOPER INDUSTRIES, LLC** *f/k/a* | § | |
| **COOPER INDUSTRIES, INC.** (*sued* | § | |
| *individually and as successor-in-interest to* | § | |
| CROUSE-HINDS COMPANY), a Texas | § | |
| Corporation with its principal place of business | § | |
| in the State of Texas; | § | |
| **CYTEC ENGINEERED MATERIALS, INC.** | § | |
| *f/k/a* CYTEC FIBERITNE, INC., *individually* | § | |
| *and as successor-in-interest to* FIBERITE, INC., | § | |
| a Delaware Corporation with its principal place | § | |
| of business in the State of New Jersey; | § | |
| **EATON CORPORATION** (*sued individually* | § | |

PLAINTIFFS' ORIGINAL PETITION AND JURY DEMAND
*JOHN H. ADAMS, et al vs. 3M COMPANY, et al.*                    Page 1

*and as successor-in-interest to* EATON §
ELECTRICAL, INC. and CUTLER HAMMER, §
INC.), an Ohio Corporation with its principal §
place of business in the State of Ohio; §
**EMERSON ELECTRIC CO.** (*sued* §
*individually and as successor-in-interest to* §
APPLETON GRP LLC *d/b/a* APPLETON §
GROUP), a Missouri Corporation with its §
principal place of business in the State of §
Missouri; §
**GENERAL ELECTRIC COMPANY**, a New §
York Corporation with its principal place of §
business in the State of Massachusetts; §
**GUARD-LINE, INC**., a Texas Corporation §
with its principal place of business in the State §
of Texas; §
**HOLLINGSWORTH & VOSE COMPANY,** §
**INC**., a Massachusetts Corporation with its §
principal place of business in the State of §
Massachusetts; §
**LOCKHEED MARTIN CORPORATION** §
(*sued individually and as successor-in-interest* §
*to* LOCKHEED CORPORATION *f/k/a* §
LOCKHEED AIRCRAFT CORPORATION), a §
Maryland Corporation with its principal place of §
business in the State of Maryland; §
**MERIDEN MOLDED PLASTICS, INC**., a §
Connecticut Corporation with its principal place §
of business in the State of Connecticut; §
**OCCIDENTAL CHEMICAL** §
**CORPORATION** (*sued individually and as* §
*successor-in-interest* HOOKER CHEMICAL §
and DUREZ PLASTICS), a New York §
Corporation with its principal place of business §
in the State of Texas; §
**PLASTICS ENGINEERING COMPANY**., a §
Wisconsin Corporation with its principal place §
of business in the State of Wisconsin; §
**R.J. REYNOLDS TOBACCO COMPANY** §
(*sued individually and as successor-in-interest* §
*to* LORILLARD TOBACCO COMPANY, LLC §
*f/k/a* LORILLARD TOBACCO COMPANY §
*f/k/a* P. LORILLARD CO., *a/k/a* LORRILARD §
TOBACCO COMPANY), a North Carolina §
Corporation with its principal place of business §
in the State of North Carolina; §
**ROCKWELL AUTOMATION, INC.** (*sued* §
*individually and as successor-in-interest* §
ALLEN-BRADLEY COMPANY, LLC *and as* §

| | |
|---|---|
| *successor-in-interest* ROSTONE | § |
| CORPORATION), a Delaware Corporation with | § |
| its principal place of business in the State of | § |
| Wisconsin; | § |
| **ROGERS CORPORATION**, a Massachusetts | § |
| Corporation with its principal place of business | § |
| in the State of Connecticut; | § |
| **SCHNEIDER ELECTRIC USA, INC.** *f/k/a* | § |
| SQUARE D COMPANY, a Delaware | § |
| Corporation with its principal place of business | § |
| in the State of Illinois; and | § |
| **UNION CARBIDE CORPORATION,** a New | § |
| York Corporation with its principal place of | § |
| business in the State of Texas, | § |
| | § |
|            Defendants. | § |

## PLAINTIFFS' ORIGINAL PETITION AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Plaintiffs, JOHN H. ADAMS and LORRAINE ADAMS, complaining of the Defendants listed below, and for cause of action would show the Court and Jury as follows:

1.      Pursuant to T.R.C.P. 190.1, discovery will be conducted under Level 2 (T.R.C.P. 190.3).  Certain Defendants named herein reside in this county, maintain offices in this county, and/or have their principal place of business in this county; therefore, venue properly lies in this county.  Certain acts or omissions, which were a proximate or producing cause of Plaintiff's asbestos-related injuries, occurred in Texas.

2.      The damages sought by Plaintiffs, exclusive of interests and costs, exceed the minimum jurisdictional limits of the Court.

3.      Plaintiff JOHN H. ADAMS resides at 124 North Camp Road, Ishpeming, Michigan 49849.

4.      Plaintiff LORRAINE ADAMS resides at 124 North Camp Road, Ishpeming, Michigan 49849.

5.      Defendant, **3M COMPANY** *f/k/a* MINNESOTA MINING AND MANUFACTURING, a Delaware Corporation with its principal place of business in the State of

Minnesota, may be served with process through its agent Corporation Service Company, CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201.  This Defendant is being sued as a Manufacturer Defendant.

6.      Defendant, **APPLETON GRP LLC** *d/b/a* APPLETON GROUP and EMERSON ELECTRIC CO., a Delaware Corporation with its principal place of business in the State of Illinois, may be served with process through its agent CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201. This Defendant is being sued as a Manufacturer Defendant.

7.      Defendant, **THE BOEING COMPANY** *d/b/a* **BOEING INTEGRATED DEFENSE SYSTEMS** (*sued individually and as successor-in-interest to* MCDONNELL DOUGLAS CORPORATION *and as successor-in-interest to* DE HAVILLAND AIRCRAFT OF CANADA LTD.), a Delaware Corporation with its principal place of business in the State of Illinois, may be served with process through its agent Corporation Service Company d/b/a CSC Lawyers Incorporated, 211 E. 7th Street, Suite 620, Austin, Texas 78701. This Defendant is being sued as an Equipment Defendant.

8.      Defendant, **CBS CORPORATION** (*f/k/a* VIACOM, INC. *successor by merger with* CBS CORPORATION *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION)(*successor-in-interest* BF STURTEVANT), a Delaware Corporation with its principal place of business in the State of New York, may be served with process through its agent Corporation Service Company d/b/a CSC Lawyers Incorporated, 211 E. 7th Street, Suite 620, Austin, Texas 78701. This Defendant is being sued as an Equipment Defendant.

9.      Defendant, **CERTAINTEED CORPORATION**, a Delaware Corporation with its principal place of business in the State of Pennsylvania, may be served with process through its agent CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201. This Defendant is being sued as a Manufacturer Defendant.

10.      Defendant, **COOPER INDUSTRIES, LLC** *f/k/a* **COOPER INDUSTRIES, INC.** (*sued individually and as successor-in-interest to* CROUSE-HINDS COMPANY), a Texas Corporation with its principal place of business in the State of Texas, may be served with process through its agent Stephen Duke Cooper, 31360 Wild Oak Hill, Fair Oaks, Texas 78015. This Defendant is being sued as a Manufacturer Defendant.

11.      Defendant, **CYTEC ENGINEERED MATERIALS, INC.** *f/k/a* CYTEC FIBERITNE, INC., *individually and as successor-in-interest to* FIBERITE, INC., a Delaware

Corporation with its principal place of business in the State of New Jersey, may be served with process through its agent Corporation Service Company d/b/a CSC Lawyers Incorporated, 211 E. 7th Street, Suite 620, Austin, Texas 78701. This Defendant is being sued as a Supplier Defendant.

12.     Defendant, **EATON CORPORATION** (*sued individually and as successor-in-interest to* EATON ELECTRICAL, INC. and CUTLER HAMMER, INC.), an Ohio Corporation with its principal place of business in the State of Ohio, may be served with process through its agent CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201. This Defendant is being sued as an Equipment and Manufacturer Defendant.

13.     Defendant, **EMERSON ELECTRIC CO.** (*sued individually and as successor-in-interest to* APPLETON GRP LLC *d/b/a* APPLETON GROUP), a Missouri Corporation with its principal place of business in the State of Missouri, may be served with process through its agent CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201. This Defendant is being sued as a Manufacturer Defendant.

14.     Defendant, **GENERAL ELECTRIC COMPANY**, a New York Corporation with its principal place of business in the State of Massachusetts, may be served with process through its agent CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201. This Defendant is being sued as an Equipment Defendant.

15.     Defendant, **GUARD-LINE, INC.**, a Texas Corporation with its principal place of business in the State of Texas, may be served with process through its agent H. Lee Stanley, 215 South Louise Street, Atlanta, Texas 75551. This Defendant is being sued as a Manufacturer Defendant.

16.     Defendant, **HOLLINGSWORTH & VOSE COMPANY, INC**., a Massachusetts Corporation with its principal place of business in the State of Massachusetts, has at all times relevant to this litigation conducted business in this State and while it is required to maintain a registered agent, it has not designated such an agency.  Therefore, said corporation may be served with process through the Secretary of State for the State of Texas at its domicile registered agent, Deirdre M. Murphy, 112 Washington Street East, Walpole, Massachusetts 02032, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§17.041-.045,. This Defendant is being sued as a Manufacturer and Distributor Defendant.

17.     Defendant, **LOCKHEED MARTIN CORPORATION** (*sued individually and as successor-in-interest to* LOCKHEED CORPORATION *f/k/a* LOCKHEED AIRCRAFT

CORPORATION), a Maryland Corporation with its principal place of business in the State of Maryland, may be served with process through its agent Corporation Service Company DBA CSC-Lawyers Incorporating Service Company, 211 E. 7ᵗʰ Street, Suite 620, Austin, TX 78701-3218. This Defendant is being sued as a Manufacturer Defendant.

18.     Defendant, **MERIDEN MOLDED PLASTICS, INC**., a Connecticut Corporation with its principal place of business in the State of Connecticut, has at all times relevant to this litigation conducted business in this State and while it is required to maintain a registered agent, it has not designated such an agency.  Therefore, said corporation may be served with process through the Secretary of State for the State of Texas at its domicile registered agent, Brenner, Saltzman & Wallman, LLP, 271 Whitney Avenue, New Haven, Connecticut 06511, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§17.041-.045.  This Defendant is being sued as a Supplier Defendant.

19.     Defendant, **OCCIDENTAL CHEMICAL CORPORATION** (*sued individually and as successor-in-interest* HOOKER CHEMICAL and DUREZ PLASTICS), a New York Corporation with its principal place of business in the State of Texas, may be served with process through its agent CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201. This Defendant is being sued as a Supplier Defendant.

20.     Defendant, **PLASTICS ENGINEERING COMPANY**, a Wisconsin Corporation with its principal place of business in the State of Wisconsin, has at all times relevant to this litigation conducted business in this State and while it is required to maintain a registered agent, it has not designated such an agency.  Therefore, said corporation may be served with process through the Secretary of State for the State of Texas at its domicile registered agent, Michael R. Brotz, 3518 Lakeshore Road, P.O. Box 758, Sheboygan, Wisconsin 53082, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§17.041-.045.  This Defendant is being sued as a Supplier Defendant.

21.     Defendant, **R.J. REYNOLDS TOBACCO COMPANY** (*sued individually and as successor-in-interest to* LORILLARD TOBACCO COMPANY, LLC *f/k/a* LORILLARD TOBACCO COMPANY *f/k/a* P. LORILLARD CO., *a/k/a* LORRILARD TOBACCO COMPANY), a North Carolina Corporation with its principal place of business in the State of North Carolina, may be served with process through its agent Corporation Service Company DBA CSC-Lawyers Incorporating Service Company, 211 E. 7ᵗʰ Street, Suite 620, Austin, TX 78701-

3218. This Defendant is being sued as a Manufacturer Defendant.

22.     Defendant, **ROCKWELL AUTOMATION, INC.** (*sued individually and as successor-in-interest* ALLEN- BRADLEY COMPANY, LLC *and as successor-in-interest* ROSTONE CORPORATION), a Delaware Corporation with its principal place of business in the State of Wisconsin, may be served with process through its agent CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201. This Defendant is being sued as an Equipment Defendant.

23.     Defendant, **ROGERS CORPORATION**, a Massachusetts Corporation with its principal place of business in the State of Connecticut, has at all times relevant to this litigation conducted business in this State and while it is required to maintain a registered agent, it has not designated such an agency.  Therefore, said corporation may be served with process through the Secretary of State for the State of Texas at its domicile registered agent, CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110, pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §§17.041-.045.  This Defendant is being sued as a Supplier Defendant.

24.     Defendant, **SCHNEIDER ELECTRIC USA, INC.** *f/k/a* SQUARE D COMPANY, a Delaware Corporation with its principal place of business in the State of Illinois, may be served with process through its agent Corporation Service Company DBA CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218. This Defendant is being sued as an Equipment Defendant.

25.     Defendant, **UNION CARBIDE CORPORATION,** a New York Corporation with its principal place of business in the State of Texas, may be served with process through its agent, CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201. This Defendant is being sued as a Supplier, Equipment, and Premises Defendant.

26.     This action is brought and these allegations are made pursuant to Tex. Civ. Prac. & Rem.  Code § 71.031.

27.     Each and every allegation in this Petition is expressly made in the alternative to, as well as in addition to, every other allegation.

### COUNT ONE
### ALLEGATIONS AGAINST MANUFACTURING
### AND EQUIPMENT DEFENDANTS

28.     Plaintiff, JOHN H. ADAMS, alleges that he was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products in his occupation.  Each Defendant corporation, **3M COMPANY** *f/k/a* MINNESOTA MINING AND MANUFACTURING; **APPLETON GRP LLC** *d/b/a* APPLETON GROUP and EMERSON ELECTRIC CO.; **THE BOEING COMPANY** *d/b/a* **BOEING INTEGRATED DEFENSE SYSTEMS** (*sued individually and as successor-in-interest to* MCDONNELL DOUGLAS CORPORATION *and as successor-in-interest to* DE HAVILLAND AIRCRAFT OF CANADA LTD.); **CBS CORPORATION** (*f/k/a* VIACOM, INC. *successor by merger with* CBS CORPORATION *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION)(*successor-in-interest* BF STURTEVANT); **CERTAINTEED CORPORATION**; **COOPER INDUSTRIES, LLC** **f/k/a** **COOPER INDUSTRIES, INC.** (*sued individually and as successor-in-interest to* CROUSE-HINDS COMPANY); **EATON CORPORATION** (*sued individually and as successor-in-interest to* EATON ELECTRICAL, INC. and CUTLER HAMMER, INC.); **EMERSON ELECTRIC CO.** (*sued individually and as successor-in-interest to* APPLETON GRP LLC *d/b/a* APPLETON GROUP); **GENERAL ELECTRIC COMPANY**; **GUARD-LINE, INC.**; **HOLLINGSWORTH & VOSE COMPANY, INC**.; **LOCKHEED MARTIN CORPORATION** (*sued individually and as successor-in-interest to* LOCKHEED CORPORATION *f/k/a* LOCKHEED AIRCRAFT CORPORATION); **R.J. REYNOLDS TOBACCO COMPANY** (*sued individually and as successor-in-interest to* LORILLARD TOBACCO COMPANY, LLC *f/k/a* LORILLARD TOBACCO COMPANY *f/k/a* P. LORILLARD CO., *a/k/a* LORRILARD TOBACCO COMPANY); **ROCKWELL AUTOMATION, INC.** (*sued individually and as successor-in-interest* ALLEN- BRADLEY COMPANY, LLC *and as successor-in-interest* ROSTONE CORPORATION); **SCHNEIDER ELECTRIC USA, INC.** *f/k/a* SQUARE D COMPANY; **UNION CARBIDE CORPORATION**, or its predecessor-in-interest, is, or at times material hereto, has been engaged in the mining, processing and/or manufacturing, sale and distribution of asbestos and asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products. Plaintiffs would show that Plaintiff had been exposed, on numerous occasions, to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products produced and/or sold by Defendants and, in so doing, had inhaled great quantities of asbestos fibers.  Further, Plaintiffs allege, as more specifically set out below,

that Plaintiff JOHN H. ADAMS has suffered injuries, illnesses and disabilities proximately caused by his exposure to asbestos-containing products designed, manufactured and sold by Defendants. In that each exposure to such products caused or contributed to Plaintiff's injuries, Plaintiffs say that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

29.     Plaintiff JOHN H. ADAMS was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products that were manufactured, designed and/or distributed by the Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery in industrial operations.  Plaintiff would show that the defective design and condition of the products rendered such products unreasonably dangerous, and that the asbestos-containing products and/or machinery were in this defective condition at the time they were designed by and/or left the hands of Defendants.  Plaintiffs would show that Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos-containing products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to the products.  Plaintiffs would show that this market defect rendered such products and/or machinery requiring or calling for the use of asbestos-containing products unreasonably dangerous at the time they were designed or left the hands of the Defendants.  Plaintiffs would show that Defendants are liable in product liability including, but not limited to, strict product liability for the above-described defects.

30.     The Defendants are or were engaged in the business of selling, manufacturing, producing, designing and/or otherwise putting into the stream of commerce asbestos-containing products and/or machinery requiring or calling for asbestos or asbestos-containing products, and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold, manufactured, produced, designed and/or otherwise put into the stream of commerce were a proximate and/or producing cause of the injuries, illnesses and disabilities of Plaintiff JOHN H. ADAMS.

31.     Defendants knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-

containing products.

32.     Plaintiff JOHN H. ADAMS was unaware of the hazards and defects in the asbestos-containing products of the Defendants, which made them unsafe for purposes of manipulation and/or installation.  Similarly, Plaintiff JOHN H. ADAMS was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

33.     During the periods that Plaintiff JOHN H. ADAMS was exposed to the asbestos-containing products and/or machinery of the Defendants, these asbestos-containing products and/or machinery were being utilized in a manner, which was intended by Defendants.

34.     In the event that Plaintiff JOHN H. ADAMS is unable to identify each injurious exposure to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, Plaintiffs would show the Court that the Defendants named herein represent and/or represented a substantial share of the relevant market of asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products at all times material to the cause of action.  Consequently, each Defendant should be held jointly and severally liable under the doctrines of enterprise liability, market-share liability, concert of action and alternative liability, among others.

35.     The illness and disabilities of Plaintiff JOHN H. ADAMS are a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, designed, sold and/or otherwise put into the stream of commerce, asbestos, asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiff JOHN H. ADAMS' health and well-being.  Certain Defendants created hazardous and deadly conditions to which Plaintiff JOHN H. ADAMS was exposed and which caused Plaintiff to be exposed to a large amount of asbestos fibers. The Defendants were negligent in one, some and/or all of the following respects, among others, same being the proximate cause of Plaintiff JOHN H. ADAMS' illness and disabilities:

(a)     in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(b)     in failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff from being harmed and disabled by exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(c)     in failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

(d)     in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and installing asbestos and/or asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and/or asbestos-containing products in a safe manner;

(e)     in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in the asbestos-containing products, and/or the machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(f)     in failing to properly design and manufacture asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)     in failing to properly test said asbestos-containing products or machinery before they were released for consumer use; and

(h)     in failing to recall and/or remove from the stream of commerce said asbestos-containing products or machinery or machinery requiring or calling for the use of asbestos and/or asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products or machinery.

///

///

## COUNT TWO
## ALLEGATIONS AGAINST 3M COMPANY

36.     All of the allegations contained in the previous paragraphs are re-alleged.

37.     Defendant **3M COMPANY** designed, marketed, sold and distributed masks and respirators, yet failed to adequately warn Plaintiff of the potential hazardous effects of being in proximity of said fibers while wearing its masks and respirators.  This failure to warn renders Defendant liable in both in negligence and in strict products liability for a marketing defect.

38.     In particular, the Defendant was negligent in one or all of the following ways, these being proximate causes of Plaintiff's illnesses and disabilities:

(a)     in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure said products;

(b)     in failing to place timely and adequate warnings on the containers of its products with regard to the limitations related to the level of protection, if any, provided through the use of its masks and respirators;

(c)     in failing to properly test said products before they were released for consumer use; and

(d)     in failing to recall and remove from the stream of commerce said products despite knowledge of the unsafe and dangerous nature of such products.

39.     Plaintiffs would also show that Defendant's products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential health hazards associated with the use of the products.  Plaintiffs would show that this marketing defect rendered such products unreasonably dangerous at the time they were designed or left the hands of 3M COMPANY.  Plaintiffs would show that Defendant is liable in strict product liability for this marketing defect.

40.     This Defendant was engaged in the business of selling, manufacturing, producing, designing and otherwise putting into the stream of commerce its products, and these products, without substantial change in the condition in which they were sold, manufactured, produced, designed and otherwise put into the stream of commerce were a proximate and producing cause of the illness and injuries of Plaintiff.

41.     This Defendant knew that its products would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they

were intended.

42.     Plaintiff was unaware of the hazards and defects in the products which made them unsafe for use.

43.      During the periods that Plaintiff was using Defendant's products, such products were being utilized in a manner that was intended by Defendant.

## COUNT THREE
## ALLEGATIONS AGAINST DISTRIBUTOR DEFENDANT

44.     All of the allegations contained in the previous paragraphs are re-alleged.

45.     For all pertinent times, Defendant, **HOLLINGSWORTH & VOSE COMPANY, INC**., (Distributor Defendants), individually, sold, distributed, and supplied asbestos and asbestos-containing product(s), which Plaintiff came in contact with and utilized, and asbestos which Plaintiff inhaled, causing his injuries and illnesses.

46.     Further, Distributor Defendant is liable to Plaintiff as a professional vendor of asbestos-containing products, and as such, because of the Defendant's size, volume of business and merchandising practices, knew or should have known of the defects of the asbestos products it sold, and are strictly liable and negligent for failing to warn the users of potential health hazards from the use of said products.

47.     For all pertinent times, Defendant, **HOLLINGSWORTH & VOSE COMPANY, INC**., sold, distributed and supplied asbestos and asbestos-containing product(s) which were unreasonably dangers for consumers and end users such as Plaintiff.

48.     These products reached consumers and end users such as Plaintiff without substantial change from the condition in which they were sold.

49.     Finally, Distributor Defendant is liable to Plaintiff because it knew or should have known that the asbestos products, which they sold and supplied, were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence.  This negligence was the cause of Plaintiff's injuries, including, but not limited to, mesothelioma and other ill health effects.

## COUNT FOUR
## ALLEGATIONS AGAINST SUPPLIER DEFENDANTS

50.     All of the allegations contained in the previous paragraphs are realleged.

51.     For all pertinent times, **CYTEC ENGINEERED MATERIALS, INC.** *f/k/a* CYTEC FIBERITNE, INC., *individually and as successor-in-interest to* FIBERITE, INC.; **MERIDEN MOLDED PLASTICS, INC**.; **OCCIDENTAL CHEMICAL CORPORATION** (*sued*

*individually and as successor-in-interest* HOOKER CHEMICAL and DUREZ PLASTICS); **PLASTICS ENGINEERING COMPANY**; **ROGERS CORPORATION**; and **UNION CARBIDE CORPORATION** (Supplier Defendants), individually, sold, distributed, and supplied asbestos and asbestos-containing product(s), which Plaintiff came in contact with and utilized, and asbestos which Plaintiff inhaled, causing his injuries and illnesses.  Specifically, **UNION CARBIDE CORPORATION** fraudulently misrepresented that its Calidria asbestos was safer than other types of chrysotile asbestos to induce asbestos manufacturers to purchase Calidria, when **UNION CARBIDE CORPORATION** knew that no scientific basis existed for making such a claim.

52.     Supplier Defendants as manufacturer, miner, shipper and supplier of asbestos fibers to various locations owned and operated by asbestos product manufacturers, are liable to Plaintiffs for failure to warn of the health hazards of exposure to asbestos and failure to design and package its product of raw asbestos so as to adequately protect and warn users of the dangers of exposure to asbestos.

53.     Further, Supplier Defendants are liable to Plaintiffs as professional vendors of asbestos-containing products, and as such, because of the Defendants' size, volume of business and merchandising practices, knew or should have known of the defects of the asbestos products they sold, and are strictly liable and negligent for failing to warn the users of potential health hazards from the use of said products.

54.     Further, Supplier Defendants made misrepresentations regarding the safety of asbestos to the asbestos-product manufacturers, thereby fraudulently inducing other sophisticated users to use Supplier Defendants' asbestos instead of other types.  As such, Supplier Defendants are liable to the Plaintiff suffering from a disease caused by exposure to the Supplier Defendants' asbestos because Supplier Defendants' fraudulent misrepresentations were detrimentally relied upon (1) by asbestos-product manufacturers incorporating Supplier Defendants' raw asbestos into their finished product and (2) by the Plaintiff who was exposed to the asbestos-containing product.

55.     Finally, Supplier Defendants are liable to Plaintiffs because they knew or should have known that the asbestos products, which they sold and supplied, were unreasonably dangerous in normal use, and its failure to communicate this information constitutes negligence.  This negligence was the cause of Plaintiff's illnesses and injuries, including, but not limited to, mesothelioma, asbestosis, asbestos-induced pleural disease and other ill health effects.

## COUNT FIVE
## CONSPIRACY ALLEGATIONS AGAINST DEFENDANTS

56.     All of the allegations contained in the previous paragraphs are re-alleged herein.

57.     Plaintiffs further allege that Defendants or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and conspired with other entities to cause Plaintiff

JOHN H. ADAMS' injuries by exposing him to harmful and dangerous asbestos-containing products. Defendants and other entities further knowingly agreed, contrived, combined, confederated, and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to work with said asbestos-containing products or to expose himself to said dangers. Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-containing products.

58.     In furtherance of said conspiracies, Defendants performed the following overt acts:

(a)     for many decades, Defendants, individually, jointly, and in conspiracy with other entities, have been in possession of medical and scientific data, literature and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

(b)     despite the medical and scientific data, literature and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with other entities, fraudulently, willfully, and maliciously:

(1)     withheld, concealed and suppressed said medical and scientific data, literature and test reports regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases from Plaintiff who was using and being exposed to Defendants' asbestos-containing products;

(2)     caused to be released, published, and disseminated medical and scientific data, literature and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated, and misleading; and

(3)     distorted the results of medical examinations conducted upon Plaintiff and workers such as Plaintiff who were using asbestos-containing products and machinery requiring or calling for the use of asbestos-containing products and being exposed to the inhalation of asbestos dust

and fibers by falsely stating or concealing the nature and extent of the harm to which Plaintiff JOHN H. ADAMS and workers such as Plaintiff JOHN H. ADAMS have suffered.

(c)     Other conspirators participating in the conspiracy, or in ongoing or subsequent conspiracies were (hereinafter called the "conspirators") member companies in the Quebec Asbestos Mining Association, the Asbestos Textile Institute, and the Industrial Hygiene Foundation.  Acting in concert, the conspirators fraudulently misrepresented to the public and public officials, *inter alia*, that asbestos did not cause cancer, that the disease asbestosis had no association with pleural and pulmonary cancer, and affirmatively suppressed information concerning the carcinogenic and other adverse effects of asbestos exposure on the human respiratory and digestive systems.

(d)     In addition, Defendants contrived, combined, confederated, and conspired through a series of industry trade meetings and the creation of organizations such as the Air Hygiene Foundation (later the Industrial Hygiene Foundation) to establish authoritative standards for the control of industrial dusts which would act as a defense in personal injury lawsuits, despite knowing that compliance with such standards would not protect workers such as Plaintiff from contracting asbestos disease or cancer.

(e)     In furtherance of said conspiracies, Defendants and their co-conspirators contributed to cause the establishment of a Threshold Limit Value for asbestos exposure, and contributed to the maintenance of such Threshold Limit Value despite evidence that this supposed "safe" level of exposure to asbestos would not protect the health of workers such as Plaintiff even when complied with.

(f)     As the direct and proximate result of the false and fraudulent representations, omissions, and concealments set forth above, Defendants, individually, jointly, and in conspiracy with others, intended to induce the Plaintiff to rely upon said false and fraudulent representations, omissions, and concealments to continue to expose himself to the dangers inherent in

the use of and exposure to Defendants' asbestos-containing products and premises.

59.     Plaintiff JOHN H. ADAMS reasonably and in good faith relied upon the false and fraudulent representations, omissions and concealments made by the Defendants regarding the nature of their asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products.

60.     As a direct and proximate result of Plaintiff JOHN H. ADAMS' reliance on Defendants' false and fraudulent representations, omissions, and concealments Plaintiff sustained damages including injuries, illnesses, and disabilities and has been deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' asbestos-containing products.

### COUNT SIX
### GROSS NEGLIGENCE ALLEGATIONS AGAINST DEFENDANTS

61.     All of the allegations contained in the previous paragraphs are re-alleged herein.

62.     The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately or together, were of such a character as to constitute a pattern or practice of gross negligence, intentional wrongful conduct or malice resulting in damages and injuries to the Plaintiff JOHN H. ADAMS.  Defendants' conduct and omissions were specifically intended by Defendants to cause substantial injury to Plaintiff JOHN H. ADAMS, or was carried out by Defendants with a flagrant disregard for the rights of others and with actual awareness on the part of Defendants that the conduct would, in reasonable probability, result in human deaths or great bodily harm. More specifically, Defendants and their predecessors-in-interest consciously and deliberately engaged in oppression, fraud, willfulness, wantonness or malice with regard to the Plaintiff and should be held liable in punitive and exemplary damages to Plaintiffs.

### COUNT SEVEN
### NEGLIGENCE PER SE ALLEGATIONS AGAINST DEFENDANTS

63.     All of the allegations contained in the previous paragraphs are re-alleged herein.

64.     The actions of Defendants also constituted negligence *per se*.

65.     Defendants violated federal and state regulations relating to asbestos exposure.

Such violations constitute negligence *per se* or negligence as a matter of law.  Further, each such violation resulted in dangerous and unlawful exposures to asbestos for Plaintiff.  Plaintiffs are not making any claims under federal law; instead, Plaintiffs are simply using the violation of federal standards as proof of liability on their state-law theories.  Further, the reference to Federal regulations does not create a Federal question.  See *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804 (1986).  Any removal on this basis will be met with an immediate motion for remand and for sanctions.

66.     The negligence *per se* of Defendants was a proximate cause of Plaintiff JOHN H. ADAMS' injuries.

## COUNT EIGHT
## LOSS OF CONSORTIUM ALLEGATIONS AGAINST DEFENDANTS

67.     All of the allegations contained in previous paragraphs are re-alleged herein.

68.     Plaintiff LORRAINE ADAMS brings this cause of action against Defendants for the loss of consortium in the marital relationship between her spouse, JOHN H. ADAMS, and herself.  Plaintiff LORRAINE ADAMS has suffered damages, both past and future, as a result of the acts and omissions of the Defendants described herein.  The physical injuries to JOHN H. ADAMS were directly and proximately caused by the Defendants and the injuries to JOHN H. ADAMS have detrimentally impaired the love, companionship, comfort, affection, solace, moral support, and physical assistance in the operating and maintaining a home that Plaintiff LORRAINE ADAMS once shared in their marital relationship, causing Plaintiff LORRAINE ADAMS pain and suffering in the past and to which she will in all likelihood continue to suffer in the future.

## DAMAGES

69.     The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the asbestos-related lung disease of Plaintiff, and of the following general and special damages including:

(a)     Damages to punish Defendants for proximately causing Plaintiff JOHN H. ADAMS' untimely injuries and illness;

(b)     The conscious physical pain and suffering and mental anguish sustained by Plaintiff JOHN H. ADAMS;

PLAINTIFFS' ORIGINAL PETITION AND JURY DEMAND
*JOHN H. ADAMS, et al vs. 3M COMPANY, et al.*                                        Page 18

(c)     The physical impairment suffered by Plaintiff JOHN H. ADAMS;

(d)     The disfigurement suffered by Plaintiff JOHN H. ADAMS;

(e)     Reasonable and necessary medical expenses incurred by Plaintiff JOHN H. ADAMS;

(f)     Plaintiff JOHN H. ADAMS' lost earnings and net accumulations;

(g)     Plaintiff JOHN H. ADAMS' mental anguish caused by the extraordinarily increased likelihood of developing (or the progression and recurrence of) asbestos-related cancer of the lungs, mesothelioma, and other cancers due to said exposure to products mined, manufactured, sold, and distributed by the named Defendants;

(h)     Past and future loss of the companionship and society, care, advice, counsel and consortium which Plaintiff LORRAINE ADAMS would have received from Plaintiff JOHN H. ADAMS prior to his illness and disability caused by his exposure to asbestos;

(i)     Punitive and exemplary damages; and

a.   All forms of pecuniary damages.

70.     By their acts and omissions described herein, Defendants intentionally, knowingly, and recklessly caused serious bodily injury to Plaintiff within the meaning of Tex.Civ.Prac.& Rem. Code §41.008(c)(7) and Tex. Penal Code §22.04.

71.     Plaintiffs filed suit within two (2) years of the date of discovering Plaintiff JOHN H. ADAMS' asbestos-related conditions or the existence of any asbestos-related causes of action.

72.     Plaintiffs seek monetary relief in excess of $1,000,000.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against the Defendants, jointly and severally, for general damages, for their costs expended herein, for interest on said judgment from the date this action accrued until paid, at the legal rate, and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

///

///

///

## JURY DEMAND

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Respectfully submitted,

**WATERS & KRAUS, LLP**


/s/ David C. Humen
David C. Humen
TX Bar No. 24087769
dhumen@waterskraus.com
Susannah B. Chester-Schindler
TX Bar No. 24056878
schester@waterskraus.com
3141 Hood Street, Suite 700
Dallas, TX 75219
(214) 357-6244
(214) 357-7252 Fax

ATTORNEYS FOR PLAINTIFFS